John M. Keane, Director Department of Labor and Industrial Relations 421 East Dunklin Jefferson City, Missouri 65101
Dear Mr. Keane:
This letter is issued in response to your request for an opinion on the following question:
 "To what extent may a State Plan for Public Employee Safety and Health administered by the State of Missouri provide for the coverage of both state and local government employees under existing state laws and the Constitution? Can such a program be initiated through Executive authority or will it be necessary for legislation to be enacted? If legislation is required, will all facets of the program require legislation or would, for example, it be able to provide coverage to some state and local government entities while others would require legislation? I reference you to the last sentence of 1956.2 (c)(1) which states: `The qualification "to the extent permitted by its law" means only that where a state may not constitutionally regulate occupational safety and health conditions in certain political subdivisions, the plan may exclude such political subdivision employees from coverage'. As such, I will need to know which agencies fall outside the extent permitted by law."
You attached to your request a copy of the regulations 29 CSR 1956 outlining the procedures and standards for establishing such a program. § 1956.1 states:
 ". . . It is the purpose of this Part to assure the availability of the protections [the Occupational Safety and Health Act of 1970 (29 U.S.C. § 667)] to public employees, where no State plan covering private employees is in effect, by adapting the requirements and procedures applicable to State plans covering private employees to the situation where State coverage under Section 18(b) is proposed for public employees only."
The regulations clearly contemplate an extensive regulation of safety practices of public employers. Some of the necessary elements of this regulatory scheme, as envisioned by the federal regulations, are: standards must be developed which are at least as effective as those promulgated under section 6 of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 667); inspectors must have the right to enter work places and have available legal process to compel such entry if access is denied; there must be sufficient trained personnel and the state agency must have sufficient budgetary resources to adequately enforce the standards; public employers must be required to maintain records and reports on occupational injuries and illnesses; procedures must be devised for the development or promulgation of new standards or modification of existing standards so as to keep the state standards in line with the federal standards; the agency must have the authority to grant variances from the standards; the agency must have the emergency powers to deal with new and unforeseen hazards; the agency must have the power to furnish to public employees information concerning hazardous conditions in their work places; standards must provide for protection of employees from exposure to hazards by such means as protective equipment or clothing, or measuring devices; protection must be provided for employees who bring possible violations to the attention of the agency; the agency must notify employees or their representatives where the agency intends not to take compliance action; the agency must inform public employees of their protections and obligations under the act; the agency must have procedures for the prompt restraint or elimination of any conditions or practices which could cause death or serious harm including legal proceedings to require such abatement; the agency must have the power, including compulsory legal process, to obtain necessary evidence or testimony in connection with inspection and enforcement proceedings; there must be a system of sanctions against public employers who violate state standards and orders; the agency must have a full administrative review procedure for notices of violations with opportunity for hearing; and the agency is to encourage state agencies and subdivisions to institute self-inspection and safety training programs.
It is clear that such an extensive statewide regulatory program of political entities other than state agencies could only be initiated by legislation.
Assuming such a program would be instituted by legislation, you next ask what political entities in the state could be subject to its provisions.
It is the opinion of this office that the General Assembly could, by an appropriately worded statute, extend this regulatory scheme to all political subdivisions of the state.
Very truly yours,
 JOHN ASHCROFT Attorney General